Rockingham
No. 91-184

STATE OF NEW HAMPSHIRE

v.

ROBERT A. HUFFMAN, JR.

August 27, 1992

*John P. Arnold*, attorney general (*Mark S. Zuckerman*, assistant attorney general, on the brief and orally), for the State.

*Twomey & Sisti Law Offices*, of Portsmouth (*Alan J. Cronheim* on the brief and orally), for the defendant.

JOHNSON, J.   The defendant, Robert A. Huffman, Jr., was convicted of aggravated felonious sexual assault, RSA 632-A:2 (Supp. 1991), and sexual assault, RSA 632-A:4. On appeal, he contends that the Rockingham County Superior Court (*Gray*, J.) erred when it limited his cross-examination of a prosecution witness and denied his motion to vacate the jury verdict. We affirm.

On the night of May 11, 1990, the defendant and the victim were drinking heavily at the Excalibur Club in Portsmouth. They left the club together in the defendant's car and drove to Rye Beach. There, the defendant pulled off to the side of the road and raped the victim in the backseat of the car. He then drove back to the Excalibur Club with the victim, parked his car, and entered the club. While the defendant was in the club, the victim, who remained outside, reported the rape to the police. The defendant, upon learning that the police were outside, fled the club, leaving his car behind in the parking lot.

Later that night, Sergeant Paul Famulari of the Portsmouth Police Department noticed a car owned by the defendant's sister being driven in a "borderline reckless and impaired" manner in downtown Portsmouth. Concerned that he was "dealing with an intoxicated or a reckless operator," Famulari followed the car to a nearby residence. He recognized the defendant, who "seemed agitated and upset," as the driver. Famulari was aware that the defendant had earlier been accused of sexual assault and asked him to come to the police station for questioning. On the way to the station, the defendant stated "that he'd seen a couple of police cruisers out in front of his car in the [parking] lot" and had "run home[ ] to get his sister's car."

In cross-examining Sergeant Famulari, defense counsel attempted to establish that the defendant fled the Excalibur Club because he feared having his driver's license revoked for drunk driving, not because he feared being charged with sexual assault:

"Q. And, in fact, was [the defendant] a candidate for further investigation relative to DWI that night . . . ?

A. Yes.

Q. Clearly someone you would have administered field sobriety tests to, is that correct?

A. Yes.

Q. On the basis of his driving and on the basis of your initial observations, you were beginning to form the opinion that he may have well been operating that motor vehicle while under the influence of an intoxicating beverage?

A. Yes.

. . . .

Q. And could you please tell the petit jury what . . . [the defendant] did for a living?

A. He was a truck driver.

Q. And are you aware of the penalty for DWI in the State of New Hampshire?

A. Yes, I am.

Q. Is one of those penalties the suspension of [a driver's] license?

A. Yes.

Q. So, clearly, if, in fact, [the defendant] was under the influence and had you proceeded with the arrest and convicted him, he would have lost his license to operate a motor vehicle?

A. Yes.

Q. And, indeed, since he held a state license, he would have lost it until the State of New Hampshire gave it back, is that correct?

A. Yes.

Q. And, clearly, while he did not have a license he could not have at least worked in accordance with the laws of the State of New Hampshire—

[STATE]: Objection, Your Honor.

Q. —is that correct?

[STATE]: If I could ask for the relevance. He wasn't arrested for DWI. That's been made clear. I have

no way of knowing where we're going. We're going to confuse the jury going off on a tangent.

[THE COURT]: What is the relevance?

[DEFENSE]: Your honor, I believe on direct examination Mr. Famulari stated that [the defendant] told him he saw two patrol cars outside his vehicle in the [club's] parking lot, so he ran home and got another car. I think that being the case, the jury is able to draw one of two inferences; one, he was leaving the scene of the allegations which form the basis of the indictment; or, two, that perhaps the reason he left the scene is for a different reason; that being the fact of his occupation as a truck driver, he felt he was intoxicated and he felt if he went back to his automobile, the two police officers—it could well be possible that he'd lose his license for DWI.

[THE COURT]: I'll sustain the objection.

■ The first issue raised on appeal is whether the trial court, in limiting defense counsel's cross-examination of Sergeant Famulari, violated the defendant's constitutional right to produce favorable evidence and confront and cross-examine witnesses under part I, article 15 of the New Hampshire Constitution and the sixth amendment to the Federal Constitution. The defendant contends that the trial court unnecessarily restricted his ability to "offer evidence which provided a reason other than guilt for his departure from the club." We hold that the trial court did not abuse its discretion, *see State v. Isaacson*, 129 N.H. 438, 440, 529 A.2d 923, 924 (1987), in limiting the cross-examination.

■ The trial court's ruling did not inhibit the defendant from attempting to convince the jury that he fled from the club in fear of being charged with driving while intoxicated. In order to effectively make such an argument, the defendant was required to establish two underlying facts: (1) that he was intoxicated; and (2) that he could have lost his driver's license (and thus his job) if convicted of driving while intoxicated. As the trial transcript indicates, defense counsel firmly established both of these facts during his cross-examination of Sergeant Famulari. Thus, defense counsel had all the ammunition he

needed to argue during his case-in-chief or closing argument that the defendant was in fear of being convicted of driving while intoxicated.

We now turn to the defendant's second argument. After the jury announced the guilty verdicts, defense counsel moved that the trial court vacate the verdicts on grounds that the State failed to satisfactorily establish that the sexual assault occurred in Rockingham County. He conceded, however, that the crime occurred in Rye. He contended that such a showing was required under RSA 625:11, III (e), which makes jurisdiction or venue an element of a criminal offense.

■ We hold that the county that a particular city or town lies within is a matter of law, since the boundaries of each county, and hence the town and cities therein, are set forth in RSA chapter 22. Thus, as a matter of law, when the State proved the crime occurred in Rye, this constituted proof that the crime occurred in Rockingham County and the venue of the trial was properly in Rockingham County. N.H. CONST. pt. I, art. 17.

*Affirmed.*

All concurred.